PHYLLIS MARSELLO, AN INFANT, BY HER GUARDIAN *AD LITEM*, JOHN MARSELLO, AND JOHN MARSELLO, IN-DIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. DR. LES-TER BARNETT, DR. HAROLD RUBIN AND DR. GEORGE T. WHITTLE, DEFENDANTS-APPELLANTS.

Argued November 8, 1967—Decided December 21, 1967.

*Mr. John I. Lisowski* for appellants (*Messrs. Lamb, Blake, Hutchinson & Dunne,* attorneys).

*Mr. Arthur N. D'Italia, Jr.* for respondents (*Messrs. Warren, Chasan, Leyner & Holland,* attorneys; *Mr. D'Italia,* on the brief).

The opinion of the court was delivered by

GOLDMANN, J. (temporarily assigned). The single question before us is whether plaintiffs, who agreed to submit their medical malpractice claim to an impartial subpanel set up under *R. R.* 4:25B, the rule dealing with professional liability claims, can revoke their consent prior to a hearing before the panel. The trial court permitted revocation. We granted defendant physicians' motion for certification while their appeal was pending in the Appellate Division. *R. R.* 1:10–1A.

Plaintiffs Marsello instituted a medical malpractice action against defendant physicians and the Monmouth Medical Center late in 1964. Phyllis Marsello, then an infant, sued by her guardian *ad litem;* she became 21 in May 1965. As the case neared trial defendants' attorney discussed with plaintiffs' then attorney the possibility of presenting the matter to a professional liability claims subpanel pursuant to *R. R.* 4:25B. It was verbally agreed that plaintiffs would discontinue their suit if the subpanel found against them. See *R. R.* 4:25B–7. On June 29, 1966 plaintiffs' attorney wrote his clients enclosing a "Request for Professional Liability (Medical) Subpanel (*R. R.* 4:25B)" form provided by the Administrative Office of the Courts. Also enclosed was a copy of the governing rules. The letter stated:

"* * * you must understand that if we are unable to convince the panel that you have reasonable grounds for a claim, then you will have to drop this case and your claim will be terminated. I call this to your attention so that you would understand the proceedings which we are undertaking in your behalf.

If you are satisfied, as I understand you are, for us to proceed in that manner, then please sign the enclosed document and return the same to us at an early date."

The executed form, dated August 3, 1966, was signed by both plaintiffs and their attorney, Phyllis Marsello having by that date attained her majority. Each of the defendant physicians thereafter executed consents that the matter be placed before an impartial subpanel.

On October 26, 1966 the Administrative Office of the Courts notified the parties that a subpanel consisting of two doctors, two attorneys, and a former Superior Court judge as chairman, naming them, would be convened the morning of November 15, 1966, at the Riverview Hospital in Red Bank, N. J. See R. R. 4:25B–4 and 4:25B–3(d). Sometime before that date plaintiffs retained their present (substituted) counsel who, on or about November 10, requested the subpanel chairman to adjourn the hearing date. The chairman indicated he had no objection and suggested that counsel get in touch with defendants' attorney. He did so by phone, explained his recent substitution as counsel, and inquired whether the attorney would agree to an adjournment to permit time for examination of the hospital records and preparation for the hearing. The request was refused; nonetheless, plaintiffs obtained an adjournment from the subpanel chairman. Thereafter, about December 2, plaintiffs' attorney discovered that an 80-page section of the hospital records was not included in his file. This section was supplied on request by defense counsel's office.

Plaintiffs' counsel represents that the time gained by the adjournment not only enabled him to fill up the gap in the medical records but permitted him to consult with medical experts as to the merits of the claim. As a result, he was successful in obtaining as expert witness the attending

urologist at a New York Hospital, who agreed to testify that Phyllis' injuries were the result of medical negligence.

The attorney for plaintiffs thereupon wrote the Administrative Office of the Courts on December 6, 1966, copy to defense counsel, withdrawing the consent to submit their claim to the impartial subpanel. He explained that the reason for initially requesting a hearing before a subpanel had now been completely obviated because plaintiffs had been successful in retaining an expert to testify on their behalf.

Defendants at once brought a motion in the Law Division of the Superior Court for an order compelling plaintiffs to submit their claim to the subpanel. The motion was denied after a hearing by Assignment Judge Hetfield who, it may incidentally be noted, was chairman of the New Jersey Supreme Court's Committee on Relations with the Medical Profession that had studied and reported on the rule in question. In his letter opinion the judge said:

"As this rule was adopted by the Supreme Court with the understanding that submission to the 'Impartial Panel' was strictly on a voluntary basis, the claimant has a right to withdraw his consent at any time prior to the hearing by the panel."

Defendants contend here, as they did below, that plaintiffs fairly and voluntarily assumed the consequences of their acts, and that the reciprocal consents given by the parties under *R. R.* 4:25B amounted to a binding contract, analogous to an arbitration agreement, which is subject to specific performance. Plaintiffs' substitution of attorney should not affect the result.

The issue before us is not to be resolved by resort to the law of contracts or arbitration agreements. We find neither applicable. Rather, the question is the construction to be given *R. R.* 4:25B and the application of this court-made rule to the present circumstances.

The purpose of the rule, as set out in *R. R.* 4:25B–1, is (a) to discourage baseless professional liability cases and

(b) to make expert medical testimony available to claimants where there is a reasonable basis for the claim. The rule is not mandatory; its voluntary nature clearly appears from *R. R.* 4:25B-3(a), which reads:

"All persons, or their representatives, claiming damages by reason of injury or death resulting from alleged medical negligence shall be encouraged to make an informal and voluntary submission of their claim, against any and all doctors against whom they believe there is a reasonable basis for claim, to a subpanel for evaluation either prior to or after the institution of legal action. It is preferable that the submission be prior to commencement of legal action."

Any doubt that the rule is fully voluntary, at least up to the point where the impartial subpanel has convened and started its hearings, is laid to rest by recalling the background of events leading up to our adoption of *R. R.* 4:25B.

The first committee to consider the proposal of professional liability panels in medical malpractice cases was the Committee on Expert Medical Testimony appointed by this court in 1960. Its October 20, 1960 report outlined a plan for the use of such panels, 83 *N. J. L. J.* 537, *Appendix* B, at *page* 543. Paragraph 3 recommends that all persons claiming damages by reason of injury or death resulting from medical malpractice "be encouraged by every available means to make an informal and voluntary submission of their claim to the panel for evaluation either prior to or after the institution of legal action." The committee stressed that the suggested plan "can only operate on a voluntary basis * * *." The report was briefly discussed at the New Jersey State Bar Association mid-winter meeting held November 18, 1960.

The committee, now designated as the Committee on Impartial Medical Experts, reexplored the problem of professional liability in medical malpractice cases in 1962. Following a meeting with representatives of the Medical Society of New Jersey on May 24, 1962, the committee unanimously agreed to recommend to this court the estab-

lishment of professional liability panels to evaluate such claims, the panels to function on an experimental basis, state-wide and for an indefinite period. Using Appendix B of the October 20, 1960 report as a starting point, the committee recommended certain changes, now substantially reflected in *R. R.* 4:25B. Its report repeats the language found in paragraph 3 of the 1960 report and again emphasizes that the suggested plan, to be successful, could only operate on a voluntary basis. The report, dated June 20, 1962, appears in 87 *N. J. L. J.* 358.

We continued the committee as the Committee on Relations with the Medical Profession, under the chairmanship of Judge Hetfield. Its report of June 4, 1964, 87 *N. J. L. J.* 353, recites its efforts to secure the interest and cooperation of members of the bar in an effort to obtain their endorsement of the proposed plan. In answer to certain reservations and criticisms of the plan the committee had encountered in its discussions with county bar associations, the committee stated that "submission is purely voluntary." This being so, it urged that this court adopt the plan on a trial basis for a year.

The final committee draft, adopted at its meeting of April 8, 1965, was considered at the Judicial Conference of June 12, 1964 and received no unfavorable comment. We adopted that draft, with minor changes, in *R. R.* 4:25B. The recommendation of the successive committees that there be "informal and voluntary submission" of medical malpractice claims to impartial subpanels is contained in *R. R.* 4:25B-3(a), quoted above.

The informal procedure to be followed in submitting a claim before a subpanel is made manifest by what appears in *R. R.* 4:25B-5 and 9. There is no requirement of strict compliance with the rules of evidence. The claimant and the doctor may testify, but need not, and cross-examination is by consent. The proceedings are to be *in camera* and no records kept. All proceedings, records, findings and recommendation of the subpanel shall be con-

fidential and may not be used in any other proceedings or otherwise disclosed without the consent of all parties.

Thus, when the trial judge stated in his opinion that submission of a claim to an impartial panel "was strictly on a voluntary basis," the claimant to have "a right to withdraw his consent at any time prior to the hearing by the panel," he was simply stating what had clearly been basic to the successive recommendations of our committees, as well as our intention in adopting *R. R.* 4:25B.

The voluntary nature of the proceedings becomes even clearer when *R. R.* 4:25B is contrasted with *R. R.* 4:25A. The latter rule deals with impartial medical examinations and expert testimony in the usual action to recover damages for personal injuries or wrongful death when the nature, extent or cause of the injuries or the cause of death are in dispute. *R. R.* 4:25A–1. At the pretrial conference, or prior to trial on motion of any party or on the court's own motion, the court may consider the appointment of an impartial medical expert. If in its opinion examination of the injured person and a report thereon, or a report on the cause of death, by an impartial medical expert would be of material aid to a just determination, the court can compel such an examination where appropriate, and a report thereon. The trial judge can compel the claimant to submit his medical records to the expert. Unlike *R. R.* 4:25B, *R. R.* 4:25A–7 provides sanctions for noncompliance with the court's orders: "the court may impose such sanctions as are just and reasonable in the circumstances, including, where appropriate, the payment of reasonable attorney's or expert's fees, the exclusion of evidence, and the dismissal of the cause of action or the suppression of defenses." Again, unlike the procedure under *R. R.* 4:25B, *R. R.* 4:25A–8 permits of the admission into evidence of the report at the trial.

One of the purposes of the rule, as already stated, is to make expert medical testimony available to claimants where there is a reasonable basis for the claim. Plaintiffs have

already found and engaged an expert. In all probability, they consider they have little to gain by going before the subpanel, and much to lose because they have bound themselves to drop all litigation if the subpanel reports that in its opinion there is no reasonable basis for their claim. And viewing the matter in another light, even if the report is favorable and the Administrative Director of the Courts supplies the names of three expert medical witnesses from the list compiled by the Medical Society of New Jersey, R. R. 4:25B–7(b), plaintiffs may feel they have no assurance that these experts will support their claim—another reason that may have led them to withdraw their consent.

Finally, the fact that plaintiffs have now procured an expert who is ready and willing to testify in their behalf may be some indication that their claim is not entirely baseless. Since a second stated purpose of R. R. 4:25B is to discourage baseless litigation, that reason for following the rule would not appear to obtain in this case.

Giving fair weight to these considerations, the purpose of the rule is not served by compelling plaintiffs to proceed to a hearing before the subpanel. To compel submission in such circumstances may make claimants less likely to agree to submit to an impartial subpanel prior to becoming convinced that they can never secure independent expert testimony. Indeed, it is unlikely that such consent will be forthcoming until the last possible moment. To make a claimant's consent binding in a situation like the present one may increase hostility toward the rule, decrease any willingness to resort to its provisions and thus defeat its very purpose, which is to encourage an informal and voluntary submission to the end that claims will either be dismissed or settled.

Defendants contend they will unfairly suffer the expenses they incurred if plaintiffs are not held to their consent. Defendants have probably incurred some expenses. Those which relate to their efforts to compel plaintiffs to submit their claim to the subpanel, by bringing the Law

Division action here under review, should not influence the result because these are litigation expenses which must normally be incurred in bringing such an action.

Expenses incurred by defendants in preparing for the scheduled subpanel hearing stand on another footing. Their claim that plaintiffs have now forced them to duplication of effort and also unjustly prolonged the litigation is not without persuasive effect. We are not informed, however, as to just what inconvenience and expense defendants have been put.

While a plaintiff is not obliged, in the circumstances of a case like this, to go through with the consent previously given, he is nonetheless bound to give reasonably early notice of his intention to withdraw, thereby obviating unnecessary effort and expense on the defendant's part. Where such notice is unreasonably delayed, the other party would be entitled to reimbursement for expenses incurred.

Accordingly, costs may better await the result of the trial. If defendants are successful, the trial judge may consider the imposition of such costs as he deems should reasonably be assessed against plaintiffs in the circumstances.

Since we consider the trial judge's determination as most consistent with the voluntary nature and purposes of *R. R.* 4:25B, the order under review is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—7.

*For reversal*—None.