JOHN H. GROVE, PLAINTIFF-APPELLANT, v.
JACOB SELTZER, DEFENDANT-RESPONDENT.

Argued March 16, 1970—Decided June 23, 1970.

*Mr. Frank A. Pelliccia* argued the cause for appellant.

*Mr. Burchard V. Martin* argued the cause for respondent (*Messrs. Taylor, Bischoff, Williams and Martin,* attorneys).

The opinion of the court was delivered by

SCHETTINO, J.   The issue before us is whether plaintiff, who agreed to submit his malpractice claim to a medical subpanel and to be bound by its determination, may revoke his consent after the subpanel has decided against him.  The Law Division dismissed plaintiff's complaint with prejudice on the ground that the agreement to be bound was specifically enforceable under *R. R.* 4:25B–7 (now *R.* 4:21–7),[1] which provided:

(a) The claimant may (but need not) agree in writing in advance not to institute legal proceedings or to dismiss any proceedings that may be pending in the event the subpanel is of the opinion that there is no reasonable basis for the claim.

(b) If the claimant does agree in writing, as provided in paragraph (a) of this rule, and if the subpanel is of the opinion that there is a reasonable basis for the claim, the Administrative Director of the Courts will supply the names of three expert medical witnesses from a list compiled by The Medical Society of New Jersey, all or any to serve at a reasonable fee to be paid by the claimant.

---

[1] Hereinafter all citations will be to the court rules effective September 8, 1969.  As indicated in the comments following *R.* 4:21–10, the text of the revised rules is basically the same with one exception. *R.* 4:21–5(a) requires not only the production of hospital and other records at the hearing but also their submission to the Administrative Director of the Courts 10 days in advance of the hearing.

Plaintiff has asserted several grounds for reversal, all of which focus upon his principal contention that his consent to be bound by the decision of the subpanel was given under duress, occasioned by the coercive effects of *R.* 4:21. Accordingly, he reasons that his consent was involuntary and is therefore void. We disagree.

In *Marsello v. Barnett,* 50 *N. J.* 577 (1967), Judge Goldmann (temporarily assigned), writing for this Court, considered the nature and operation of *R.* 4:21. After reviewing the history of *R.* 4:21 and comparing it to various other rules, Judge Goldmann concluded that the rule was purely voluntary on both sides. *Id.* at 583–85.

We reaffirm that conclusion. In our view, *R.* 4:21 is not a rule in the traditional sense, since there is no compulsion involved. Rather, we believe that *R.* 4:21 is similar to a voluntary service which both parties may utilize if they so desire.

Consistent with our view, we allowed the complainant in *Marsello,* who had already agreed to be bound by the subpanel's finding, to revoke his consent prior to the hearing. Judge Goldmann explained that:

> To make a claimant's consent binding in a situation like the present one may increase hostility toward the rule, decrease any willingness to resort to its provisions and thus defeat its very purpose, which is to encourage an informal and voluntary submission to the end that claims will either be dismissed or settled. (50 *N. J.* at 586).

However, to allow plaintiff to revoke his consent after the subpanel has reached its decision would permit plaintiff to breach a fully executed agreement that he entered into knowingly and voluntarily and would render the rule a nullity since there would be no inducement for a doctor to consent to a hearing.

After pretrial discovery, plaintiff and his counsel requested in writing that the medical subpanel be convened pursuant to *R.* 4:21 to determine whether there was a reasonable basis for plaintiff's action. In making the initial request, plaintiff

and his counsel stated in writing that they did not agree to be bound by an adverse decision of the subpanel. On February 28, 1967, defendant's attorney notified plaintiff and his counsel that unless they changed their position, *i. e.,* agreed to be bound by the subpanel's decision (*R.* 4:21–7), defendant would not consent to the request.

On June 7, 1967, plaintiff's former counsel wrote to the Administrative Director of the Courts advising him that:

> John B. Grove now wishes and agrees to be bound by the findings of the Professional Liability (Medical) Subpanel. As his attorney, I certify that as a fact, for the *decision was reached after considerable thought and deliberation.* (Emphasis added).

Subsequently, plaintiff and his counsel signed the official claimant's form, Request for Professional Liability (Medical) Subpanel, in which they had "X'd" the box which provided:

> With regard to the above claim made, I agree not to institute any legal proceedings and to dismiss any pending legal proceedings against the named doctor(s) in the event the Professional Liability (Medical) Subpanel, after reviewing the claim, is of the opinion that there is no reasonable basis for it.

Thus, there can be no question that plaintiff clearly understood the consequences of his action and chose to invoke the subpanel procedure in the hope of securing expert medical testimony.

The subpanel first convened on August 9, 1967, and after considering the evidence it concluded that there was no reasonable basis for plaintiff's claim. Plaintiff's counsel successfully applied for a rehearing which was held on March 16, 1968. Both plaintiff and defendant testified, and reports by physicians who had recently examined plaintiff were submitted to the subpanel. The subpanel again decided that there was no reasonable basis for the claim and "recommended that any legal proceedings be discontinued." Plaintiff therefore had two opportunities to present whatever evidence he desired, and we fail to see any irregularities in the

proceedings. Accordingly, the judgment of the trial court is:

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.